UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
S.L.,

              Plaintiff,

           -against-

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES; ALEJANDRO MAYORKAS;
NEW YORK ASYLUM OFFICE; UR MENDOZA JADDOU;
TED H. KIM; JOHN LAFFERTY; MATTHEW D. EMRICH;
and PATRICIA A. MENGES;

              Defendants.
------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
24-CV-02776 (OEM)

ORELIA E. MERCHANT, United States District Judge:

      Plaintiff S.L. ("Plaintiff") brings this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, and the Mandamus Act, 28 U.S.C. § 1361, against Defendants the United States Citizenship and Immigration Services ("USCIS"); Alejandro Mayorkas, the former United States Secretary of Homeland Security; Ur Mendoza Jaddou, the former Director of USCIS; the USCIS New York Asylum Office; Ted H. Kim, the Associate Director of the USCIS Refugee, Asylum, and International Operations Directorate; Matthew D. Emrich, the Associate Director of the USCIS Fraud Detection and National Security Directorate; and Patricia A. Menges, the Director of the USCIS New York Asylum Office (collectively, "Defendants"). Complaint and Action in Mandamus ("Compl."), Dkt. 1. Plaintiff seeks an order from this Court directing Defendants to adjudicate Plaintiff's I-589 Petition for Asylum and for Withholding of Removal. *Id.*

      Before the Court is Defendants' fully briefed motion to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") and 12(b)(6) ("Rule 12(b)(6)") for

1

lack of subject-matter jurisdiction and for failure to state claims for which relief can be granted. For the following reasons, Defendants' motion is denied in part and granted in part.

## BACKGROUND[1]

Plaintiff is a citizen of Guyana who fled his home country in 2021 because of harassment, threats, and violence on account of his sexual orientation. Compl. ¶¶ 2, 26-29. He left behind two children. *Id.* ¶ 31.

On October 19, 2021, Plaintiff filed his I-589 Application for Asylum and Withholding of Removal ("Asylum Application" or "I-589 Application"), which the USCIS received on November 2, 2021. *Id.* ¶ 3. Since that time, Defendants have not scheduled an interview or adjudicated his asylum application. *Id.*

On July 14, 2023, Plaintiff filed a request to expedite his asylum application after learning that his children in Guyana were living in "squalid conditions" with their mother and her abusive boyfriend who used drugs and alcohol in front of them. *Id.* ¶ 31. Plaintiff's petition for expedited review was denied on October 23, 2023. *Id.* His application has now been pending for nearly four years. *Id.* ¶ 30.

Plaintiff alleges various harms stemming from the delay in the adjudication of his asylum application, including "severe mental and emotional anguish" from the prolonged separation from his children. *Id.* ¶ 33. Plaintiff also alleges that he suffers from financial hardship as he is unable to find stable employment and make long-term plans. *Id.* ¶¶ 34-35, 37. He also contends that the delay prejudices his ability to obtain asylum because the passage of time will make it "increasingly difficult to obtain evidence and witnesses to corroborate [Plaintiff's] claims and [Plaintiff's]

---

[1] For the purposes of resolving the motion to dismiss, the Court assumes all factual allegations therein to be true and draws all reasonable inferences in favor of Plaintiff as the non-moving party. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

2

memories will fade," thereby "increasing the risk [Plaintiff] will forget details and give inconsistent testimony." *Id*. ¶ 39.

Plaintiff takes issue with USCIS' policies for processing and adjudicating asylum applications, arguing that these policies have led to the indefinite suspension of his application. *Id*. ¶ 42. USCIS currently utilizes a last-in, first-out ("LIFO") policy for scheduling asylum interviews. USCIS Affirmative Asylum Interview Scheduling, Compl, Ex. A, Dkt. 1-3. Under this policy, applicants are divided into three pools. First priority goes to applicants whose interviews were previously cancelled by either the applicant or USCIS. Second priority goes to new applications pending 21 days or less. Third priority goes those in the "asylum backlog" who are waiting for interviews, starting with the most recently added applicants. *Id*. Within this third group, USCIS prioritizes scheduling interviews for cases filed more than one year after the applicant's arrival in the United States, as there is a one-year filing deadline and "there are far more untimely filed cases in the backlog than available interview slots currently." Declaration of Andrew Davidson in Support of Motion to Dismiss Complaint ("Davidson Decl."), Compl., Ex. B, Dkt. 1-4, ¶ 29. Plaintiff filed his application within the one-year deadline and claims that his application "may never adjudicated or will not be adjudicated for so many years that Defendant's delay is unreasonable." Compl. ¶ 42.

## PROCEDURAL HISTORY

Plaintiff commenced this action on April 12, 2024, asserting claims under the APA and the Mandamus Act. *See* Compl. The complaint attached thirteen exhibits. *Id.*

On April 16, 2024, Plaintiff filed a motion for leave to proceed anonymously, *see* Plaintiff's Memorandum of Law in Support of Motion for Leave to Proceed Anonymously, Dkt. 15-1, which the Court granted on April 17, 2024.

3

On September 6, 2024, Defendants filed a pre-motion conference request on their anticipated motion to dismiss. *See* Letter from Mary McGarvey-Depuy, Defense Counsel, to the Court, Dkt. 19. Plaintiff filed a responsive letter on September 27, 2024. *See* Letter from Luc W.M. Mitchell, Plaintiff's Counsel, to the Court, Dkt 21. The Court denied Defendants' request for a pre-motion conference and set a briefing schedule on the motion to dismiss on October 7, 2024.

After receiving several extensions, Defendants filed the fully briefed motion on March 20, 2025. *See* Memorandum of Law in Support of Defendant's Motion to Dismiss the Complaint ("Defs.' Mem."), Dkt. 27-1. That same day, Plaintiff filed a motion to strike portions of Defendants' memoranda of law and supporting declaration. *See* Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint and in Support of Plaintiff's Cross-Motion to Strike Portions of Defendants' Motion to Dismiss ("Pl.'s Opp."), Dkt. 28. As Defendant's reply addressed Plaintiff's motion to strike, the Court ordered Plaintiff to file a sur-reply in support of its motion to strike on March 21, 2025. Plaintiff filed the sur-reply on March 28, 2025. *See* Sur-Reply in Further Support of Plaintiff's Cross-Motion to Strike Portions of Defendants' Motion to Dismiss, Dkt. 34.

On March 31, 2025, Plaintiff requested oral argument on Defendants' motion to dismiss. The Court granted the request and held oral argument on April 15, 2025.

## LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The party asserting subject-matter jurisdiction

must establish by a preponderance of the evidence that jurisdiction exists. *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).

A motion to dismiss on jurisdictional grounds "may be either 'facial,' i.e., based solely on the allegations of the complaint and exhibits attached to it, 'or fact-based,' i.e., based on evidence beyond the pleadings." *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022) (citation omitted). Facial attacks challenge the sufficiency of the pleading and, like a motion under Rule 12(b)(6), require the Court to accept all factual allegations in the complaint as true. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) ("In reviewing a facial attack to the court's jurisdiction, we draw all facts—which we assume to be true unless contradicted by more specific allegations or documentary evidence—from the complaint and from the exhibits attached thereto."). Unlike a facial attack, a factual attack places the "jurisdictional facts [ ] in dispute[,]" *Harty*, 28 F.4th at 441, by "proffering evidence beyond the [p]leading[s][.]" *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016); *Gonzalez v. Northwell Health, Inc.*, 632 F. Supp. 3d 148, at 158 (E.D.N.Y. 2022). In resolving factual attacks on jurisdiction, the Court "has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citation omitted).

B. **Federal Rule of Civil Procedure 12(b)(6)**

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). In evaluating a Rule 12(b)(6) motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). When considering a Rule 12(b)(6) motion, the Court must "test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 155 (2d Cir. 2006).

Under Federal Rule of Civil Procedure 8 ("Rule 8"), a plaintiff need only provide a short, plain statement of their claim against the defendants. The complaint must, at a minimum "disclose sufficient information to permit the defendant 'to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'" *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (citation omitted).

## DISCUSSION

Defendants argue that the Court should dismiss each of Plaintiff's claims under either Rule 12(b)(1) or Rule 12(b)(6). *See* Defs.' Mem. at 14-25. Defendants specifically seek to dismiss Plaintiff's mandamus claim for lack of subject-matter jurisdiction under Rule 12(b)(1). *See id.* at 15-18.

A.     **Plaintiff's Mandamus Act Claim**

Plaintiff seeks a writ of mandamus to compel Defendants to adjudicate his I-589 Application. Compl. ¶¶ 78-83. Defendants move to dismiss Plaintiff's mandamus claim under Rule 12(b)(1) for lack of subject matter jurisdiction. Defs.' Mem. at 16.

The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "[M]andamus is an extraordinary remedy, intended to aid only those parties to whom an official or agency owes 'a clear nondiscretionary duty.'" *Escaler v. USCIS*, 582 F.3d 288, 292 (2d Cir. 2009) (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)). The "exercise of the power of mandamus is a matter committed to the sound discretion of the [trial] court*.*" *Pesantez v. Johnson*, 15-CV-1155 (BMC), 2015 WL 5475655, at *3 (E.D.N.Y. Sept. 17, 2015) (quoting *Cartier v. Sec'y of State*, 506 F.2d 191, 199 (D.C. Cir. 1974)). To obtain relief under the Mandamus Act, a plaintiff must show that "(1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available." *Benzman v. Whitman*, 523 F.3d 119, 133 (2d Cir. 2008).

Plaintiff has not plausibly alleged that the Immigration and Nationality Act ("INA"), ch. 477, 66 Stat. 163 (1952) (codified as amended at 8 U.S.C. §§ 1101-1537), provides him a clear right to adjudication of his application within any particular time frame. Relying on 8 U.S.C. § 1158(a) ("Section 1158"), which provides that an alien who is physically present or arrives in the United States "may apply for asylum," Plaintiff contends that he is seeking to enforce "his Section 1158(a) right to have his application adjudicated at all—something that Defendants' LIFO policy has deprived him of." Pl.'s Opp. at 19. Plaintiff states that he does not seek to enforce the

7

statutory timelines in Section 1158(d)(7) and that, therefore, Defendants' reliance on cases finding no clear right to relief are inapposite because the plaintiffs in those cases sought immediate adjudication of their application. *Id*. Plaintiff contends that he is not seeking immediate adjudication of his application but merely that his application be adjudicated. *Id*.

Plaintiff's contention fails for several reasons. Section 1158(a) cannot be the basis for Plaintiff to seek the relief he seeks—adjudication of his application—because he has in fact applied for asylum. *See* Section 1158(a) ("Any alien who is physically present in the United States or who arrives in the United States . . . may apply for asylum in accordance with this section or, where applicable, section 1225(b) of this title."). Further, Plaintiff has not plausibly alleged that his application is not in the process of being adjudicated.

Courts in this circuit, including this Court, have routinely held that asylum applicants do not have a "clear right" to the immediate adjudication of their asylum application. *See, e.g., Fang v. Gray,* 23-cv-06886 (OEM), 2025 WL 296531, at *6 (E.D.N.Y. Jan. 23, 2025) (holding that a plaintiff does not have a clear right to prompt adjudication of their asylum application); *Ngai v. Mayorkas*, 22-CV-5358, 2024 WL 1346530, at *2 (E.D.N.Y. Mar. 29, 2024) (same); *Baisheng Chen v. Wolf*, 19-CV-9951, 2020 WL 6825681, at *3 (S.D.N.Y. Nov. 20, 2020) (same); *He v. Garland*, 23-CV-05386, 2024 WL 3708146, at *2 (E.D.N.Y. Aug. 7, 2024) (same); *Zheng v. Garland*, 22-CV-6039, 2024 WL 333090, at *4 (E.D.N.Y. Jan. 29, 2024) (same).

But even if Plaintiff could articulate a clear right to the immediate adjudication of his asylum application, mandamus relief would still be unavailable because Plaintiff fails to allege that no other adequate remedy is available. To the contrary, Plaintiff has demonstrated the availability of at least one such alternative remedy: an "unreasonable delay" claim under the APA. *See* Compl. ¶¶ 58-63. This is true even if Plaintiff's APA claim fails on the merits. *Zheng*, 2024

WL 333090, at *5 (dismissing mandamus claim due to possible § 706(1) remedy although the remedy was "not available because of the plaintiff's particular circumstances"); *Luo v. USCIS*, 23-CV-1104, 2023 WL 5672041, at *3 (E.D.N.Y. Sept. 1, 2023) (explaining that mandamus relief was not available because an alternative adequate remedy was possible under the APA "even though . . . Plaintiff's APA claim also fails on the merits" (citation and internal quotation marks omitted)). Because Plaintiff fails to state a claim for relief under the Mandamus Act that claim is dismissed.[2]

**B.      Plaintiff's APA § 706(1) Claim**

Plaintiff also seeks to compel Defendants to adjudicate his asylum application on the ground that the application process has been unreasonably delayed in violation of APA § 706(1). Compl. ¶¶ 58-63. Defendants argue that Plaintiff cannot demonstrate the delay in adjudicating his I-589 Application is unreasonable. Defs.' Mem. at 2.

The APA requires that, "within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). Federal courts have the power to "compel agency action" that has been "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). "However, the judicial review provisions of the APA do not apply 'to the extent that . . . statutes preclude judicial review.'" *Shabaj v. Holder*, 718 F.3d 48, 52 (2d Cir. 2013). To determine the reasonableness of the delay in processing asylum application, the Court "look[s] to the source of

---

[2] Some courts frame a plaintiff's inability to satisfy the predicates for mandamus relief as a question of subject-matter jurisdiction rather than failure to state a claim. *See Rahman v. USCIS Director Jaddou*, No. 22-101, 2022 WL 6593589, at *2 (2d Cir. Oct. 11, 2022) ("A district court's jurisdiction under the mandamus statute is limited to actions 'seeking to compel the performance of a nondiscretionary duty.'" (citing *Duamutef v. INS*, 386 F.3d 172, 180 (2d Cir. 2004) (emphasis omitted)); *H.M.G. v. Johnson*, 599 F. App'x 396, 397 (2d Cir. 2015) (affirming dismissal of mandamus claim for lack of subject-matter jurisdiction where petitioner had "identified neither a clear right to relief nor a 'plainly defined and peremptory duty' on the part of the federal agency respondents"). *But see Zheng*, 2024 WL 333090, at *5 ("The Court adopts the reasoning in the recent decisions in this district in which courts have dismissed actions seeking mandamus relief to compel USCIS to evaluate asylum applications pursuant to Rule 12(b)(6)."). Whether Rule 12(b)(1) or Rule 12(b)(6) is the appropriate vehicle for dismissal does not matter here; Plaintiff fails to state a claim for mandamus relief.

delay – e.g., the complexity of the investigation as well as the extent to which the defendant participated in delaying the proceeding," *Reddy v. Commodity Futures Trading Comm'n*, 191 F.3d 109, 120 (2d Cir. 1999), and to the factors established in *Telecommunications Research and Action Center ("TRAC") v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984). *See Nat. Res. Def. Council, Inc. v. FDA*, 710 F.3d 71, 84 (2d Cir. 2013) (citing *TRAC*, 750 F.2d at 80). The *TRAC* factors are:

> (i) the time agencies take to make decisions must be governed by a rule of reason;
> (ii) where Congress has provided a timetable, it may supply content for this rule of reason;
> (iii) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (iv) the effect of expediting delayed action on agency activities of a higher or competing priority;
> (v) the nature and extent of the interests prejudiced by delay; and
> (vi) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Fangfang Xu v. Cissna*, 434 F. Supp. 3d 43, 51 (S.D.N.Y. Jan. 16, 2020) (citations omitted). A plaintiff need not "demonstrat[e] that all of these factors weigh in [their] favor" to prevail on an undue delay claim under the APA. *Mu v. USCIS.*, 23-CV-02067 (HG), 2023 WL 4687077, at *4 (E.D.N.Y. July 22, 2023). Rather, the factors are "intended to provide 'useful guidance in assessing claims of agency delay.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *TRAC*, 750 F.2d at 80).

At the pleading stage, the Court's role is "not determining whether there has been an unreasonable delay, but rather, it is determining whether [Plaintiff's] complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay." *Kaur v. Mayorkas,* 22-CV-4514 (PAE), 2023 WL 4899083, at *5 n.6 (S.D.N.Y. Aug. 1, 2023) (quoting *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 50 (D.D.C. 2021)). The Court accepts as true the factual allegations in the complaint and draws all reasonable inferences in Plaintiff's favor under the *TRAC* factors.

Defendants argue that the first, third, fourth and fifth *TRAC* factors warrant dismissal of Plaintiff's claim. Defs.' Mem. at 19-24. While Defendants do not address the second factor, Plaintiff raises that factor in opposition. Pl.'s Opp. at 11-12. The Court addresses these factors in turn.

### 1. The First *TRAC* Factor: Rule of Reason

As for the first *TRAC* factor, whether "the time agencies take to make decisions [is] governed by a 'rule of reason,'" *TRAC*, 750 F.2d at 80, and Defendants argue that the asylum LIFO policy has been found to constitute a rule of reason by other courts. Defs.' Mem. at 21-22 (citing *Konde v. Raufer*, 23-CV-4265, 2024 WL 2221227, at *3 (S.D.N.Y. May 16, 2024); *Zheng*, WL 333090, at *6; *Ying Yu Liu v. Wolf*, 19-CV-410, 2020 WL 2836426, at *8 (S.D.N.Y May 30, 2020); *Xu*, 434 F. Supp. 3d at 53).

Consistent with other decisions in this circuit, this Court holds that Defendants' use of a LIFO scheduling system to root out "fraudulent, otherwise non-meritorious, or frivolous claims" is an appropriate rule of reason. Davidson Decl. ¶ 17; *see Mu*, 2023 WL 4687077, at *4 (E.D.N.Y July 22, 2023) (collecting cases). Plaintiff does not allege any other cause for the delayed decision. The Court is sensitive to the fact that Plaintiff has had to wait nearly four years for an adjudication of his application, and during this time he has been separated from his children. However, courts have declined to find that the first *TRAC* factor favors compelling adjudication of asylum applications where such applications have been pending for the same amount of time. *See Xu*, 434 F. Supp. 3d at 48 (declining to compel decision on asylum application that had been pending for four years and dismissing complaint); *Htoo v. Mayorkas*, 24-CV-07514, 2025 WL 315828, at *7 (same); see also *Da Costa v. Immigr. Investor Prog. Off.*, No. 22 Civ. 1576 (JEB), 2022 WL 17173186, at *10 (D.D.C. Nov. 16, 2022) ("Although no bright lines have been drawn in this

11

context, district courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." (citation omitted)).

### 2. The Second *TRAC* Factor: Congressional Timetable

The second *TRAC* factor provides that "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for [the first factor's] rule of reason." *TRAC*, 750 F.2d at 80. Congress has supplied a relevant timetable in Section 1158(d)(5): absent exceptional circumstances, an initial interview or hearing "shall" be held no later than 45 days after the asylum application filing date, and a final adjudication "shall" be made within 180 days of filing. 8 U.S.C. §§ 1158(d)(5)(A)(ii)-(iii). Defendants have far exceeded the statutory timetable with Plaintiff's application.

However, Section 1158(d) bars private enforcement of these timelines and contains qualifying language as to their applicability, suggesting that Congress did not intend for the timelines to be mandatory. *Xu*, 434 F. Supp. 3d at 53 ("This [asylum application] timetable, however, is not mandatory: Congress stated that it did not create any substantive or procedural right to adjudication within any time period."); *Zhuo v. Mayorkas*, 23-CV-5416 (DLI), 2024 WL 4309232, at *4 (E.D.N.Y. Sept. 26, 2024) ("The qualifying phrase 'absen[t] exceptional circumstances' suggests that Congress intended that the timeline not apply while the USCIS is dealing with an exceptional level of asylum applicants." (quoting 8 U.S.C. § 1158(d)(5)(A)(ii))). The INA timelines also do not interfere with a finding that LIFO is a rule of reason. *Jan v. Mayorkas*, 24-CV-1686 (LDH), 2025 WL 964092, at *4 (E.D.N.Y. Mar. 31, 2025) ("[T]he timetables contained in § 1158(d)(5)(A) do not interfere with finding that the LIFO rule provides

12

a rule of reason, insofar as Congress's decision not to structure the statute as creating a procedural right or benefit to enforce the timetables rendered them non-binding."); *Zhuo*, 2024 WL 4309232, at *4 ("[T]he first and second TRAC factors support Defendants' position that the adjudication of asylum applications pursuant to LIFO is a rule of reason."). As such, the second *TRAC* factor does not favor granting relief to Plaintiff.

### 3. The Third and Fifth *TRAC* Factors: Health, Welfare, and Other Interests

The third and fifth TRAC factors, which are often analyzed together, ask whether "human health and welfare are at stake" and examine the "nature and extent of the interests prejudiced by delay." *TRAC*, 750 F.2d at 80; *Qi v. USCIS.*, 23-CV-08843 (JLR), 2024 WL 2262661, at *6 (S.D.N.Y. May 17, 2024) ("Courts analyze TRAC factors three and five together, looking to the possible effects a delay has had on a plaintiff's health and welfare and to the nature and extent of the interests prejudiced by the delay." (citation omitted)). Plaintiff alleges that, due to the delay in the adjudication of his asylum application, he has suffered severe mental and emotional anguish" from prolonged separation from his children. Compl. ¶ 33. Plaintiff also alleges that the uncertainty has caused him financial hardship and rendered him unable to make plans long term plans. *Id.* ¶¶ 34-35, 37. Plaintiff further alleges that the passage of time will lead to evidentiary decay and thereby prejudice his ability to obtain asylum. *Id.* ¶ 39.

These hardships alleged by Plaintiff, however, are largely "inherent in the asylum application process." *Xu*, 434 F. Supp. 3d at 54. Courts in this circuit have held that similar allegations do not meet the standard of health and welfare being at stake. *See, e.g.*, *Sheiner v. Mayorkas*, 21-CV-5272 (ER), 2023 WL 2691580, *9 (S.D.N.Y. Mar. 29, 2023) ("[A]llegations of uncertainty and delay do not amount to the showing other courts have held meets the standard of human health and welfare being at stake."); *Cohen v. Jaddou*, 21-CV-5025 (PAC), 2023 WL

13

2526105, at *5-6 (S.D.N.Y. Mar. 15, 2023) ("[T]he Court is sympathetic to Plaintiff's frustration with his travel restrictions . . . [but] Plaintiff does not allege restrictions that implicate his or his family's health and human safety."). Plaintiff's allegations of anguish due to being separated from his children and their squalid living conditions implicate human welfare, and the Court does not minimize that harm. But Plaintiff's situation "could just as easily be true for every other noncitizen whose asylum application has been delayed." *De Oliveira v. Barr*, 19-CV-1508 (ENV), 2020 WL 1941231, at *5 (E.D.N.Y. Apr. 22, 2020); *see also Chen v. Mayorkas*, 736 F. Supp. 3d 151, 161 (E.D.N.Y. 2024), *appeal dismissed sub nom, Chen v. Noem*, 2025 WL 1466205 (2d Cir. May 22, 2025) ("This is the regrettable reality that our immigration system—"overstressed" and "under-resourced" as it is—has wrought for many families."). Placing Plaintiff ahead of other asylum applicants through a court order would produce "no net gain" and could further delay applications that have been pending even longer than Plaintiff's. *De Oliveira*, 2020 WL 1941231, at *5 ("The fact that the plaintiffs experience 'anxiety and emotional distress' could just as easily be true for every other noncitizen whose asylum application has been delayed. Therefore, an order in favor of the plaintiffs would . . . result[] in no net gain.") (citations omitted)). Thus, the third and fifth *TRAC* factors do not favor Plaintiff.

### 4. The Fourth *TRAC* Factor: Consequences of Expediting Agency Action

As for the fourth *TRAC* factor, "the effect of expediting delayed action on agency activities of a higher or competing priority," *TRAC*, 750 F.2d at 80, Defendants argue that "requiring immediate adjudication of Plaintiff's I-589 would unjustifiably favor him over others pending in similar circumstances, in a manner contrary to USCIS' LIFO prioritization of the newest applicants." Defs.' Mem. at 20. Plaintiff again argues that Defendants mischaracterize the relief

14

sought, stating that he is not seeking immediate adjudication of his application but rather that his Asylum Application be adjudicated at all. Pl.'s Opp. at 13.

Plaintiff's argument is not persuasive. As discussed above, Plaintiff has not plausibly alleged that his Asylum Application is not in the process of being adjudicated. Additionally, Plaintiff does not explain how "leap-frogging him to the front of the adjudication queue would be beneficial to USCIS." *Chen*, 736 F. Supp. 3d at 161. Courts in this district have routinely dismissed undue delay claims when the requested relief would "simply jump[] one plaintiff to the front of the line and push[] everyone else further back." *Yang v. Houghton*, 21-CV-5485 (BMC), 2021 WL 5879033, at *1 (E.D.N.Y. Dec. 13, 2021); *see also, e.g.*, *De Oliveira*, 2020 WL 1941231, at *5; *Almakalani v. McAleenan*, 527 F. Supp. 3d 205, 224-25 (E.D.N.Y. 2021); *L.M. v. Johnson*, 150 F. Supp. 3d 202, 213 (E.D.N.Y. 2015). As such, the fourth *TRAC* does not favor granting relief.

In sum, the *TRAC* factors do not support a finding of unreasonable delay. The Court therefore finds that Plaintiff fails to state a claim under APA Section 706(1) and dismisses that claim.

## C.  Plaintiff's APA § 706(2) Claims

Plaintiff argues that Defendants' LIPO policy is unlawful under APA § 706(2). Compl. ¶¶ 64-77. Specifically, Plaintiff asserts that the LIFO policy exceeds Defendants' statutory authority, is not in accordance with law, and is arbitrary and capricious. *See* 5 U.S.C. §§ 706(2)(A) & (C). Defendants contend that Plaintiff lacks standing to assert such claims and that Plaintiff's assertion regarding the suspension of his Asylum Application has been overtaken by an adjustment of USCIS' processing priorities. Defs.' Mem. at 24-25.

15

There are three elements that a plaintiff must show to establish standing. First, a plaintiff must show that he (1) suffered an "injury in fact" that (a) is concrete and particularized and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defs. Wildlife*, 504 U.S. 555, 560 (1992). Second, the injury must be fairly traceable to the challenged action of the defendant and not the result of independent action by a third party not before the court. *Id.* "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (citation omitted).

Defendants do not contest that Plaintiff has suffered the requisite injury in fact. Rather, Defendants argue that Plaintiff's injury is not exclusively traceable to the LIFO policy. Defs.' Mem. at 24 ("Plaintiff has not shown that his injury would be traceable to USCIS's 2018 switch to LIFO, as opposed to a combination of circumstances outside USCIS control . . . in addition to LIFO."). This argument is misguided, as a plaintiff does not need to show that a defendant's conduct is the sole cause of the injury. *See Massachusetts v. EPA*, 549 U.S. 497, 526 (2007) (finding standing where the defendant's challenged conduct contributed, along with other factors, to the plaintiff's injuries); *Carter v. HealthPort Technologies, LLC*, 822 F.3d 47, 59 (2d Cir. 2016) ("[A] plaintiff's injury need not be 'directly' attributable to a defendant in order to show the causation element of standing to sue that defendant, so long as the injury is "fairly traceable to that defendant.").

Defendants also assert that Plaintiff does not establish redressability, "as he has not shown that eradicating LIFO, leaving no scheduling system, would "redress" the alleged injury of not having an interview date." Defs.' Mem. at 24. This argument ignores that Plaintiff seeks an injunction compelling Defendants to adjudicate Plaintiff's asylum application "without further delay." Compl. ¶ 84(d).

16

Although Defendants' standing challenge is unsuccessful, Plaintiff has nonetheless failed to state a viable § 706(2) claim through the facts alleged in the complaint. Plaintiff argues that the LIFO policy is not in accordance with law and exceeds Defendants' statutory authority because it violates his "statutory right to asylum and to be considered for relief pursuant to 8 U.S.C. § 1158(a) and the APA's requirement that Defendant's discharge this duty without unreasonable delay." Compl. ¶¶ 66, 70. For reasons stated above, these claims provide no grounds for relief. Section 1158(a) merely provides the right to be considered for asylum relief, and Plaintiff has not plausibly alleged that his application is not being adjudicated. Defendants' adjudication of the application is also not unreasonably delayed under the *TRAC* factors. Plaintiff's argument that the LIFO policy is arbitrary and capricious similarly boils down to a claim of unreasonable delay and thus fails. *See* Compl. ¶ 75.

### D.   Plaintiff's Motion to Strike

In his opposition memoranda to Defendants' motion to dismiss, Plaintiff contends that Defendants improperly presented extrinsic evidence beyond the scope of the pleadings. Pl.'s Opp. at 24-25. Plaintiff moves the Court to strike said evidence from Defendants' motion. *Id.* As the Court solely relies on the pleadings and rules on this motion pursuant to Rule 12(b)(6), Plaintiff's motion to strike is denied as moot.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted. Accordingly, Plaintiff's Complaint is dismissed without prejudice to refile if there is a continued delay and Plaintiff is able to state additional facts or causes of action.

The Clerk of Court is respectfully directed to enter judgment and close this action.

SO ORDERED.

/s/
ORELIA E. MERCHANT
United States District Judge

October 17, 2025
Brooklyn, New York